### IN THE

# SUPREME COURT OF TENNESSEE

### FOR THE

## MIDDLE DIVISION

---

## NASHVILLE, DECEMBER TERM, 1924.

---

LYNN H. DINKINS *v.* FARMERS' BANK & TRUST Co. *et al.*[*]

## (*Nashville.* December Term, 1924.)

1. **PLEDGES.** Pledgee may repledge pledged property for sum not greater than pledgor owes pledgee.

   Pledgee may repledge pledged property for sum not greater than pledgor owes pledgee. (*Post, pp.* 486-491.)

2. **PLEDGES.** Liability on loan held that of bank as repledging pledgee of cotton.

   Facts *held* to show that liability for indebtedness created by loan of money secured by pledge of cotton was that of bank which procured the loan and pledged the cotton, as against the contention that bank was merely acting as agent for the original owners of the cotton who had pledged it to the bank. (*Post, pp.* 486-491.)

---

[*]Headnotes 1. Pledges, 31 Cyc, p. 849; 2. Pledges, 31 Cyc, p. 819.

---

FROM SHELBY.

---

Appeal from the Chancery Court of Shelby County.—
Hon. D. W. De Haven, Chancellor.

Canada & Williams and Edward P. Russell, for appellant.

Ewing, King & King and Little, Buck & Lasley, for appellee.

Mr. Justice McKinney delivered the opinion of the Court.

By the bill complainant seeks to recover a decree against the defendant, Farmers' Bank & Trust Company of Blytheville, Ark., on an account in the sum of $3,193.70, with interest.

The chancellor dismissed the bill and complainant has appealed.

In 1922 W. C. Knight & Co., cotton factors at Memphis, was adjudged a bankrupt, and its assets, including notes and accounts, were sold to complainant. Included in the accounts so purchased was the one sued upon in this cause.

In the winter of 1920, J. T. Hall & Co., a firm composed of J. T. Hall and B. J. Sanford, were engaged in buying and selling cotton at Blytheville, Ark. Early in 1920 they purchased fifty-nine bales of cotton at a point in Missouri, had same shipped to Blytheville, and stored in a compress. Warehouse receipts were issued for same and turned over to the defendant bank to secure it in the payment of the purchase money which it had

advanced to J. T. Hall & Co., the same being more than $8,000.

The cotton market was declining in price and the bank evidently wanted its money, so that in the latter part of March Sanford went to Memphis, with samples of this cotton, and called on W. C. Knight & Co., and was advised by it that said cotton was worth around thirty-six cents per pound, but the owners were unwilling to sell at that price. Knight & Co. agreed to advance them $75 per bale on said cotton. Sanford returned to Blytheville, and, after discussing the matter with his partner, Hall, and the president of the bank, it was agreed to consign the cotton to W. C. Knight & Co., and to procure from it the sum which it offered to advance.

The warehouse receipts were turned over to the compress company, and the fifty-nine bales of cotton were duly shipped, the bill of lading being issued in the name of the bank. The bank drew a draft on Knight & Co., to which was attached said bill of lading. Said draft was as follows:

"The Farmers' Bank & Trust Co.

"Blytheville, Ark., April 6, 1920.

"On demand, pay to the order of Farmers' Bank & Trust Co., Blytheville, Ark., $4,425, four thousand four hundred twenty-five and no/100 dollars, with exchange and collection charges.

"Value received and charge same to account of.

"THE FARMERS' BANK & TRUST CO.,

"By H. E. BARNETT, Cashier.

"To W. C. Knight & Co., Memphis, Tenn.

"Advance on 59 B/C."

Upon presentation of this draft the next day, Knight & Co., wrote defendant bank as follows:

"April 7, '20.

"Farmers' Bank & Tr. Co., Blytheville, Ark.—Dear Sirs: Your draft with B/L attached for fifty-eight B/C was presented today, which we are returning you, for the reason that shipment is made to your order, notify us, and you failed to indorse B/L; also, you failed to show marks and numbers of cotton on B/L, which is very essential to us for proper identification of your cotton. We note also draft is drawn on basis of $75 on fifty-nine B/C., while B/L only calls for fifty-eight bales, which is not in keeping with agreement, and draft or B/L should be corrected accordingly, and made to correspond.

"On return of draft with B/L attached for fifty-nine B/C, showing marks and numbers and properly indorsed to us, we will pay it per agreement.

"Yours very truly,

"W. C. KNIGHT & Co., Secty. & Treas."

One bale of this lot of cotton had been shipped to another concern in Memphis through mistake. This matter was straightened out to the satisfaction of the parties, other corrections made, the draft was returned, was paid by Knight & Co., and charged to the defendant bank.

The proceeds of the draft was credited on the note of J. T. Hall & Co., held by the defendant bank, leaving the balance owing by them to it, on said lot of cotton, around $3,800.

Cotton continued to decline. At one time Knight & Co. was offered twenty cents per pound for the cotton, or in the neighborhood of $5,900, which would have paid its advance and left around $1,400 to apply on the $3,800 indebtedness to the bank, but the parties declined to sell. Eventually, in 1921, the cotton was sold, and, after crediting the proceeds on the account, there was a balance due Knight & Co., including interest, of $3,193.70, the sum sued for herein.

It is insisted by the defendant bank that this is not its indebtedness but that of J. T. Hall & Co.; that it was only acting as agent for Hall & Co., which fact was known by Knight & Co.

As to the material facts we find little controversy in the testimony. Knight & Co., at the time it paid said draft, evidently thought that this was the cotton that Sanford interviewed it about, and later, after the cotton arrived and was sampled, it knew that it was the same. Knight & Co. also knew that the defendant bank had furnished the money to pay for said cotton, and that it held the cotton as security for the money so advanced. No doubt but that Knight & Co. thought that Hall & Co. had a supposed equity in the cotton. That is to say, that any sum in excess of the bank debt went to Hall & Co.

It seems to us that this cause is governed by the simple principles of bailment. The bank had furnished the money to buy the cotton and Hall & Co. had pledged the cotton to it as security for the loan. Hall & Co. were the pledgors, and the bank the pledgee. Even without the consent of Hall & Co. the bank had a right to repledge the property so long as it was not for a greater sum than Hall & Co. owed it, and so long as Hall & Co. could

repossess themselves of the cotton by paying their debt, but here the bank pledged the cotton to Knight & Co., with the consent of Hall & Co., and they received the benefit of the advance made by Knight & Co.

Under the facts of this cause there can be no question but that this was a repledge of the cotton by the bank and was so intended by it. Hall & Co. were not mentioned in the transaction, and the bank requested Knight & Co. to charge the advance to it, and it did exactly what it was requested to do. Where was the authority to charge the draft to Hall & Co.? Suppose they had charged the draft to Hall & Co., and had sold the cotton the next week for $9,000, crediting Hall & Co. therewith, and in a few days had paid the balance to Hall & Co., and they had failed to pay defendant bank? It is manifest that the bank would have had an action against Knight & Co., and it would be here contending that Knight & Co. was directed to charge the draft to it, but it had wrongfully charged same to Hall & Co.; that Knight & Co. knew that the cotton was pledged to it for the purchase money, but that it had wrongfully paid the proceeds of sale to Hall & Co.

Knight & Co. made no mistake in this matter. The parties never intended that this cotton should be treated as the property of Hall & Co., and the account run in their name. We are satisfied that the bank did not intend to release its security as pledgee.

While this is conclusive and renders the bank liable to complainant, we are further of the opinion, after carefully considering the entire record, that Knight & Co. extended the credit to the bank and not to Hall & Co.

For the reasons stated, the decree of the chancellor will

Dinkins v. Farmers' Bank & Trust Co.

be reversed, and a decree will be entered in this court in favor of complainant for the sum sued for, to-wit, $3,193.70, together with interest from February 20, 1922; also for the costs of the cause.